James V. **MARTIN** and Frieda L. Martin,
Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 19264.

United States Court of Appeals
Eighth Circuit.

June 16, 1969.

Earle J. Niederluecke, St. Louis, Mo., for appellants and filed brief.

Frank X. Grossi, Jr., Atty., Dept. of Justice, Washington, D. C., for appellee; Mitchell Rogovin, Asst. Atty. Gen., and Lee A. Jackson and Harry Baum, Attys., Washington, D. C., and Veryl L. Riddle, U. S. Atty., and James M. Gordon, Asst. U. S. Atty., St. Louis, Mo., were on the brief with Mr. Grossi.

Before VAN OOSTERHOUT, Chief Judge, and MEHAFFY and HEANEY, Circuit Judges.

MEHAFFY, Circuit Judge.

The Government brought this action against the taxpayers, James V. Martin and Frieda L. Martin, husband and wife, for the recovery of federal income taxes assessed for the calendar years 1951 through 1954, and against the taxpayer-husband for unpaid withholding taxes for portions of the years 1956 and 1957.

During the calendar years 1951 through 1954, taxpayer-husband was a member of a partnership, Rinaldo Tailors, from which he received an income and during those years the taxpayer-wife had no taxable income.[1] Neither of the taxpayers filed income tax returns for the years involved. This came to the attention of the Internal Revenue Service, causing an agent to investigate into the tax liability. In the course of his investigation, the revenue agent interviewed the taxpayer-husband and his accountant, examined the books of the business and concluded that there was a deficiency. In a conversation with tax-payer-husband, the agent was advised that the taxpayers wanted the tax computed on a joint basis, and taxpayer-wife wrote the agent agreeing to that procedure. The agent prepared the substituted tax returns on a joint basis which neither taxpayer signed.

The case was tried to The Honorable James H. Meredith, Judge of the United States District Court for the Eastern District of Missouri, who found the issues favorable to the Government. Judge Meredith's memorandum opinion is reported at 274 F.Supp. 1002.

We affirm the judgment of the district court.

The issues presented by this appeal are (1) whether the district court properly upheld the Commissioner's determination that payments received in the taxable years by a partnership of which taxpayer-husband was a member, under contracts to furnish custom made suits or topcoats in a later taxable year, were includable in the gross income in the year received, regardless of whether the partnership filed its returns on the cash or accrual basis; and (2) whether the court was correct in holding that, despite having no separate income, the written consent of taxpayer-wife to have the tax liability of both spouses computed on a joint return basis, under the circumstances, was sufficient to establish joint and several tax liability. Taxpayer-husband on this appeal concedes the correctness of that portion of the judgment relating to taxpayer-husband's liability for withholding taxes for the years 1956 and 1957.

Taxpayer-husband was a partner in Rinaldo Tailors which operated a "suit club," the members of which agreed to pay $2.00 a week for 39 weeks and $1.00 the fortieth week for a total of $79.00. Upon payment of the full amount, the customer selected the material, some of which Rinaldo had on hand or otherwise procured, and was measured for a suit or topcoat of the customer's choice. The

---

1. During a portion of 1954 taxpayer operated the business as a sole proprietorship after buying his partner's interest.

suit or topcoat was then made to order by the Elco Tailoring Company, an independent, unrelated corporation, and delivered to the customer. Rinaldo furnished the customer a payment book in which the prepayments were entered and upon which appeared the following:

"IT IS HEREBY AGREED that in the event the holder of this book shall refuse or discontinue payments, as herein agreed, the company may retain all moneys paid by the purchaser as liquidated damages and shall make no refund to purchaser of any payments made, either in cash or merchandise."

The books of Rinaldo were kept on a cash basis but copies of the partnership information returns indicated that for tax purposes the income included only fully paid accounts and none of the installment payments in the process of collection. These latter sums were treated as an advance and deducted in computing the yearly receipts or sales. This method of not including the installment payments in gross receipts at the time received resulted in the company's showing losses for each year on the partnership information return. Upon the advice of his accountant, taxpayer-husband filed no personal income tax returns for the years involved. The Commissioner determined that the accounting method employed by the company did not clearly reflect income for tax purposes. The agent therefore prepared, as he was authorized to do, substituted tax returns which taxpayers at no time signed or acknowledged. Thereafter, a statutory notice of deficiency was mailed to taxpayers notifying them of the amount of unpaid taxes, penalties and interest being claimed against them. When taxpayers failed to file a petition for redetermination of the assessment with the Tax Court, the Commissioner of Internal Revenue made an assessment for unpaid income taxes, penalties and interest against taxpayers, and later on May 23, 1958 a notice and demand was made upon taxpayers for payment thereof. In 1962 taxpayers executed waivers extending the period of collection of these taxes to December 31, 1967.

Taxpayers first argue that the statutory "90 day letter" recites at one place that the gross receipts shown on the partnership return were underestimated as certain of said receipts were "received under a claim of right without any restrictions," and that the court erroneously decided the case on the theory that the agent changed accounting methods because Rinaldo's books did not clearly reflect income. The "90 day letter" was a fifteen-page document which contained the asserted statement but also various computations and explanations which amply apprised taxpayers of the basis of the deficiency. Beyond that, this letter was forwarded after the revenue agent had many conferences with taxpayer-husband and his accountant and neither could have been misled respecting the Government's position. The examination commenced when it was discovered that the taxpayers had filed no returns at all for the years involved. Furthermore, the Internal Revenue Service was unable to find any filing of a partnership return by Rinaldo, but during the course of the investigation taxpayer-husband's auditor furnished a retained copy of the partnership information return. From an examination of this return as well as from the internal books of the partnership, it was found that the books were kept on a cash basis but that gross income was erroneously computed by eliminating all payments received from its customers upon all contracts which were not fully paid out. The revenue agent determined that this method of reporting was inconsistent with the partnership's cash basis of accounting, and accordingly made the adjustments to clearly reflect the income as provided for in the Internal Revenue Code of 1954, § 446(b), which states:

"Exceptions—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion

of the Secretary or his delegate, does clearly reflect income."

■ Taxpayers' argument is based upon a false premise as it is settled law that, if the assessment of the Commissioner is right on any theory, it must be sustained. Blansett v. United States, 283 F.2d 474, 478–479 (8th Cir. 1960).

In the early case of Helvering v. Gowran, 302 U.S. 238, 246, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937), Mr. Justice Brandeis, writing for the Court, said:

> "If the Commissioner was right in his determination, the Board properly affirmed it, even if the reasons which he had assigned were wrong. And, likewise, if the Commissioner's determination was right, the Board's affirmance of it should have been sustained by the Court of Appeals, even if the Board gave a wrong reason for its action."

Mr. Justice Brandeis also said (302 U.S. at 245, 58 S.Ct. at 158):

> "In the review of judicial proceedings the rule is settled that if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason. (Citing cases.)"

*Gowran* has been often and consistently cited.

Compare Mills v. C.I.R., 399 F.2d 744, 748 (4th Cir. 1968); Frank v. C.I.R., 321 F.2d 143, 148 (8th Cir. 1963); Allen v. United States, 359 F.2d 151, 153 n. 6 (2nd Cir. 1966), cert. denied, 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67 (1966), wherein the court said: "But, if right on any theory, the Commissioner's determination should be sustained. (Citing cases.)"

■ Since no other evidence was adduced by the taxpayers, there was nothing to rebut the presumption of correctness of the Commissioner's assessment. It is fundamental that the taxpayers have the burden of showing that the Commissioner's deficiency determination, apart from fraud, is incorrect. Hamm v. C.I.R., 325 F.2d 934, 937 (8th

Cir. 1963), cert. denied, 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046 (1964).

■ The partnership, being on a cash basis, was required to report all payments when received irrespective of the fact that they were not payments in full. This, of course, is true when the taxpayer receives funds without restriction as to use. Even if the partnership was on the accrual basis, the result would be the same. Schlude v. Commissioner of Internal Revenue, 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633 (1963); American Automobile Ass'n v. United States, 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961).

*Joint Liability.*

Nearing the close of the investigation, the revenue agent explained to taxpayer-husband and his accountant that the Government desired to know whether the taxpayers wanted their returns filed as single or joint returns. The taxpayer indicated that he desired to avail himself of the joint return, and it was stipulated that taxpayer-wife addressed a letter to Mr. E. C. Dreas, Internal Revenue Agent, Room 838 New Federal Building, St. Louis 1, Missouri, as follows:

> "Dear Mr. Dreas:
>
> "The income tax returns for the years 1951, 1952, 1953, 1954 are joint returns for me and my husband. Any tax that may be required due to the income should be treated as a joint return.
>
> "I am willing and agreeable that for the years mentioned above that it should be filed as a joint return.
>
> > "Sincerely,
> > Frieda L. Martin."

Additionally, taxpayer-wife testified at the trial in the district court with respect to the above letter:

> "Q. You do recall signing it? A. Yes.
>
> "Q. At whose request, if you remember? A. At my husband's request so it would be to both's benefit."

This is not a case where there was any coercion used as the testimony was

undisputed that not only in this case but the policy of the Internal Revenue Service generally is to let the taxpayer take his choice in order to effect the maximum saving. The taxpayers did not complain or make any objection whatsoever after the report reflecting the joint return application was forwarded to them.

We held in Heim v. C.I.R., 251 F.2d 44 (8th Cir. 1958), that whether a joint return is filed depends upon the facts of the case and the taxpayer's intent. The district court held that under the aforementioned facts it had no hesitancy in finding that liability for deficiency as assessed as a result of the authorized computation should be joint and several. We agree.

The judgment of the district court is affirmed.